IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                                  Case No. 3:17cr62

RASHARD J. BROWN,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Rashard Brown's Motion for

Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF

No. 36.) The United States responded in opposition (the "Opposition"). (ECF No. 38.) Brown

did not reply and the time to do so has expired. The matter is ripe for disposition. The Court

dispenses with oral argument because the materials before it adequately present the facts and

legal contentions, and argument would not aid the decisional process. For the reasons that

follow, the Court will deny the Motion for Compassionate Release.

## I. Background

On July 13, 2017, Rashard Brown pled guilty to possession with the intent to distribute

and distribution of cocaine, along with possession of a firearm by a convicted felon. (Plea

Agreement, ECF No. 17; PSR ¶ 11, ECF No. 22.) The Presentence Report ("PSR") describes the

conduct underlying Brown's offenses. (*Id.* ¶ 20). From October 2014 to January 2015, law

enforcement officers conducted a series of controlled "buys" from Brown, who law enforcement

identified as cooking and selling cocaine and cocaine hydrochloride (otherwise known as

"crack"). (*Id.*) On July 28, 2016, in Hopewell, Virginia, police officers attempted to stop Brown

in the vehicle he was driving. (*Id.*) In an attempt to evade police, Brown pulled into a driveway

and ran from the vehicle, dropping a firearm to the ground. (*Id.*) Police apprehended Brown and found a plastic bag with distribution amounts of cocaine hydrochloride (19.15 grams) and cocaine base (14 grams) in his vehicle. (*Id.*) Police later identified the firearm as a Glock Model 17, a semi-automatic 9mm pistol. (*Id.*)

Prior to sentencing, the probation office prepared the PSR for Brown, summarizing his criminal history. Brown fell into criminal history category III based on his prior convictions. (PSR 18.) In 2005, Brown was convicted of distribution of cocaine in the second degree in Sussex County Circuit Court, for which he served one year in prison and three years on supervised probation. (*Id.* ¶ 41.) In 2013, Brown was found guilty of intentional destruction of property by the Juvenile and Domestic Relations Court in Petersburg, Virginia, which substituted one year of jail time with three years on good behavior. (*Id.* ¶ 43.)

Pursuant to the Sentencing Guidelines, Brown's Total Offense Level of 29 and Criminal History Category of III resulted in an advisory sentencing guideline range of 108–135 months of imprisonment. (*Id.* ¶ 92.) The PSR provided information on Brown's physical condition, noticing that he walks with a slight limp due to a bullet wound in his leg. (*Id.* ¶ 72.). The PSR also mentioned that "[Brown] indicated he has suffered from asthma since he was a child and he is prescribed an Albuterol inhaler to use as needed." (*Id.* ¶ 74.). However, the PSR further noted that Brown has no history of illness or hospitalizations and his health is good. (*Id.*).

On September 28, 2017, this Court sentenced Brown at the low end of the Guidelines range, imposing 108 months of incarceration followed by four years of supervised release. (J. 2-3, ECF No. 27.) Brown is currently housed at Hazelton USP.[1] The Bureau of Prisons ("BOP")

---

[1] The Parties state that Brown is housed at FCI Morgantown but BOP records indicate that he is currently housed at Hazelton USP. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. As of April 27, 2021, the BOP reports that 120 inmates have

2

states that Brown will be released on October 16, 2024. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

On April 20, 2020, Brown submitted a request for compassionate release to the Warden of the BOP facility where he was incarcerated at the time. (ECF No. 38-1). On May 5, 2020, the Warden denied Brown's request. (*Id.*) On May 18, 2020, Brown requested the Warden reconsider his decision, which the Warden denied ten days later, on May 28, 2020. (*Id.*)

On October 18, 2020, Brown filed the instant Motion for Compassionate Release. (ECF No. 36.) In the Motion, Brown broadly describes the current public health crisis in BOP facilities caused by COVID-19. (Mot. 4-6.) Brown, now thirty-six years old, contends that his asthma leaves him especially susceptible to the dangers of COVID-19, noting that the CDC reports that individuals "'with moderate to severe asthma may be at higher risk of getting very sick from COVID-19,' and further that 'COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease.'" (*Id.* 4.) (internal citations omitted). Brown, whose parents are both ill and disabled, states that, upon release, he would reside with his sister, work as a brick mason, support his five children, and "seek medical treatment for his asthma as needed." (*Id.* 6-7.) Furthermore, Brown avers that for the more than two years that he has been incarcerated, he has had a "clean disciplinary record," has "engaged in positive programming," and "has worked hard to complete his GED." (*Id.* 10.)

The United States opposes Brown's request for compassionate release, arguing that he fails to provide any "support for the severity of his medical condition," and that the Bureau of

---

tested positive for COVID-19 at Hazelton USP. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.

Prisons classifies Brown as a "Care Level 1 inmate (or a 'generally healthy' inmate)." (Opp'n 8, ECF No. 38.) The United States contends that Brown himself noted that he does not regularly visit the doctor for a specific reason and that his mother previously confirmed his good health. (*Id.* 8-9.) The United States also critiques Brown's release plan because it could "increase the risk of exposure for defendant, his family, and anyone with whom they come into contact." (*Id.* 12.) Furthermore, the United States argues that the statutory sentencing factors weigh against release because Brown distributed "between 280 and 840 grams of crack cocaine," had a previous conviction for cocaine distribution, and "possessed a loaded firearm while he was in possession of a distribution quantity of cocaine." (*Id.* 13.) The United States points to the fact that so far Brown "has only served about a third of the sentence imposed by the Court," and thus an early release would "not reflect the seriousness of his offense," and nor would it "adequately deter him from future criminal conduct." (*Id.*)

As of April 27, 2021, Hazelton FCC[2] has vaccinated 369 staff members and 1140 inmates. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[3] Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

[2] Hazelton FCC contains two facilities: Hazelton FCI and Hazelton USP. *See* Bureau of Prisons, *Our Locations*, https://www.bop.gov/locations/list.jsp.

[3] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request

4

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

## A.     Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

---

by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

**B.     Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify

terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission further defines "extraordinary and compelling

reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No.

109, at *4 (E.D. Va. May 21, 2020).  The Sentencing Commission identifies four instructive

categories of extraordinary and compelling reasons that allow for a sentence to be modified:  the

petitioner's medical condition, age, family circumstances, and other reasons.  U.S.S.G. § 1B1.13,

n.1 (A)–(D).[4]

The United States Court of Appeals for the Fourth Circuit has explained, however, that

"[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or

her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement

---

[4] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C.
> § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a
> term of supervised release with or without conditions that does not exceed the
> unserved portion of the original term of imprisonment) if, after considering the
> factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the
> court determines that—
> > (1) (A) extraordinary and compelling reasons warrant the reduction; or
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30
> > years in prison pursuant to a sentence imposed under 18 U.S.C.
> > § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> > (2) the defendant is not a danger to the safety of any other person or to the
> > community, as provided in 18 U.S.C. § 3142(g); and
> > (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

C.     **Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release**

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Brown has sufficiently exhausted his administrative remedies. Pursuant to 18 U.S.C. § 3582(c)(1)(A), Brown filed his Motion for Compassionate Release with the Court after "the lapse of thirty days from the receipt" of his request by the Warden. (Mot. 4.).

Although Brown exhausted his administrative remedies, the Court will deny the Motion because Brown does not offer any "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). While noting that he uses a prescribed inhaler, Brown fails to provide any particularized details regarding the severity of his asthma condition. (Opp'n 7-9.) Further, Brown, now thirty-six years old, stated that he does not regularly visit a doctor for any ongoing health problems, and Brown's mother corroborates his good health. (*Id.*) The record does not show that Brown raises serious concerns regarding his potential susceptibility to COVID-19. In any event, the Court will consider Brown's request under the applicable statutory sentencing factors.

Upon review, Brown's previous conviction for cocaine distribution and his underlying convictions demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. Brown's repeated distribution offenses and his felony possession of a firearm reflect that he presents a danger both to himself and the community.

Turning to other § 3553(a) factors, the Court notes that Brown has served less than half of his original sentence and will not be released for about another four years. Additionally, upon release Brown will begin to serve a four-year supervised release term for his offense. Although the Parties indicate that Brown has not committed any disciplinary infractions for more than two

years while in federal detention, his previous criminal history suggests that the Court should consider public safety and whether his sentence promotes respect for the law. The Court finds that while Brown's sentence adequately deters criminal conduct, the seriousness of Brown's offense and the need to protect the public outweigh immediate release.

Brown further contends that his Motion should be granted because he has a clean disciplinary record and has engaged in BOP sponsored education and vocational opportunities. (Mot. 8, 10.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. Brown displays progress in his rehabilitation and this Court commends his efforts. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). While Brown's good behavior and participation in GED programs during his limited time in prison are acknowledged, these measures do not warrant his early release in light of the seriousness of his convictions and the remaining time on his sentence.

Finally, the Court recognizes the grave health risks prisoners are facing during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates. Beyond the instant case, federal inmates nationwide are starting to receive COVID-19 vaccinations. *See, e.g., United States v. Jones*, No. 3:19cr105, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021) (noting defendant had received his first COVID-19 vaccination on January 6, 2021). While the Court is not aware of whether Brown has obtained his vaccine, the BOP

reports that most inmates at Hazelton FCC have now been vaccinated.  The Court requests that the BOP issue a COVID-19 vaccine to Brown if it has not done so already.

In sum, the Court concludes that the current record does not justify Brown's immediate release from federal imprisonment.

### IV.  Conclusion

For the reasons explained above, the Court will deny the Motion.  (ECF No. 36.)

An appropriate Order shall issue.

/s/
_____
M. Hannah Lauck
United States District Judge

Date: April 30, 2021
Richmond, Virginia

11